UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATHAN BERNARD EDWARDS,

                        Plaintiff,

                v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                        Defendant.

**DECISION
and
ORDER**

**17-CV-1247F**
(**consent**)

_____

APPEARANCES:          LAW OFFICES OF KENNETH HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER and
                              TIMOTHY HILLER, of Counsel
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202
                                      and
                              PADMA GHATAGE
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              26 Federal Plaza – Room 3904
                              New York, New York 10278
                                      and
                              LAURA RIDGELL BOLTZ, and
                              MARC THAYNE WARNER
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              1961 Stout Street, Suite 4169
                              Denver, Colorado 80294

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 7). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 10, 2018 (Dkt. 9), and by Defendant on November 9, 2018 (Dkt. 11).

## BACKGROUND

Plaintiff Nathan Bernard Edwards ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on June 23, 2009, for Supplemental Security Income under Title XVI of the Act ("SSI" or "disability benefits"), alleging he became disabled on February 3, 2009, by right hip and low back injury, high blood pressure, gout, and high cholesterol ("initial application"), which conditions caused Plaintiff to stop working on May 28, 2009. AR[2] at 113-16, 137-38. Plaintiff's initial application was denied on September 25, 2009, AR at 66-70, and on October 2, 2009, Plaintiff requested a hearing before an administrative law judge. AR at 74-76. On February 24, 2011, a hearing ("first administrative hearing"), was held in Buffalo, New York before administrative law judge William E. Straub ("ALJ Straub"). AR at 28-52. Appearing and testifying at the first administrative hearing were Plaintiff, with legal counsel Melissa Pezzino, Esq. *Id.* On March 14, 2011, ALJ Straub rendered his decision ("First ALJ

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on July 10, 2018. (Dkt. 8).

Decision"), denying the initial application.  AR at 14-27.  On May 9, 2011, Plaintiff requested review of the First ALJ Decision by the Appeals Council.  AR at 11.  On November 29, 2011, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the First ALJ Decision the Commissioner's final decision.  AR at 2-7.  On January 30, 2012, Plaintiff commenced an action in this court challenging the Commissioner's decision denying him disability benefits.  On March 28, 2013, the district court remanded the matter to the Commissioner for a new hearing, *see Edwards v. Astrue*, No. 12-CV-83S, slip op. at 6-7 (Dkt. 10) (W.D.N.Y. Mar. 28, 2013); AR at 568-74, and on July 9, 2013, the Commissioner remanded the matter to the ALJ with instructions to obtain additional evidence regarding Plaintiff's impairments and to hold another administrative hearing.  AR at 575-79.  Accordingly, on June 5, 2014, a second administrative hearing ("second administrative hearing"), was held in Buffalo, New York before ALJ Stanley A. Moskal ("ALJ Moskal").[3]  *See* AR at 583.  Appearing and testifying at the second administrative hearing were Plaintiff, with legal counsel Kelly Laga, Esq., and vocational expert ("VE") Rachel A. Duchon ("VE Duchon").  AR at 583.  In a decision dated February 24, 2015 ("Second ALJ Decision"), ALJ Moskal denied the initial application.  AR at 583-93.  On March 27, 2015, Plaintiff sought review of the Second ALJ Decision by the Appeals Council.  AR at 737-39.  On April 11, 2016, the Appeals Council remanded the matter to the ALJ for a new hearing.  AR at 600-01.  On June 17, 2017, a third administrative hearing ("third administrative hearing"), was held in Buffalo, New York before ALJ Melissa Lin Jones ("ALJ Jones" or "the ALJ").  AR at 497-

---

[3] The transcript from the second administrative hearing is not in the record, and the exhibit denominated as such, *i.e.*, at AR 497-54, does not pertain to the second administrative hearing, but to a subsequent hearing held June 27, 2017.

3

545. Appearing and testifying at the second administrative hearing were Plaintiff, with legal counsel Kelly Laga-Sciandra, and vocational expert ("VE"), Jeane Bechler ("VE Bechler"). *Id.* In a decision rendered September 22, 2017 ("Third ALJ Decision"), ALJ Jones found Plaintiff was disabled as of October 4, 2016, but not before. AR at 472-496. On December 1, 2017, Plaintiff commenced the instant action seeking judicial review of the Third ALJ Decision insofar as Plaintiff was awarded disability benefits only as of October 4, 2016.

On September 10, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum"). On November 9, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 11-1) ("Defendant's Memorandum"). On November 30, 2018, Plaintiff filed Plaintiff's Reply Brief (Dkt. 12) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[4]

Plaintiff Nathan Bernard Edwards ("Plaintiff"), born October 5, 1961, was 47 years old as of his asserted disability onset date of February 3, 2009. AR at 113, 156.

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

Plaintiff is a high school graduate and was in regular classes, AR at 33-34, 143, obtained vocational training as a firefighter in the military, AR at 34, and has past relevant work experience as a cable installer, construction worker, cook, ham cutter, and roofer, AR at 139, and served as a firefighter in the military for 16 years. AR at 139. Plaintiff never married and lives with his sister. AR at 161-62, 505.

## **DISCUSSION**

1.   **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.     Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[6] there is a presumption of inability to perform SGA and the claimant is deemed disabled regardless

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

6

of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, Plaintiff argues the ALJ failed to adhere to the treating physician's rule in explaining the weight given to opinions rendered by Plaintiff's treating sources, Plaintiff's Memorandum at 10-15, the ALJ's determination that Plaintiff can stand for six hours of an 8-hour day is not supported by substantial evidence, *id.* at 15-17, and, alternatively, the ALJ failed to develop the record and misapplied the "five-day

7

rule." *Id.* at 17-21.[7] Defendant argues the ALJ gave sufficient reasons for discounting the opinions of Plaintiff's medical treatment sources, Defendant's Memorandum at 13-17, the ALJ's determination of Plaintiff's capacity to stand is supported by substantial evidence in the record, *id.* at 17-18, and the ALJ did not misapply the "five-day rule." *Id.* at 18-22. In further support of his motion, Plaintiff argues timely submitted evidence was ignored by the ALJ, Plaintiff's Reply at 1-2, the ALJ confuses standing and walking, *id.* at 2-4, and the ALJ fails to point to any relevant evidence supporting his decision not to give the medical opinions of Plaintiff's treating sources controlling weight. *Id.* at 5.

### A. "Five-Day Rule" and Failure to Develop the Record[8]

Plaintiff argues that despite his attorney advising the ALJ by letter dated June 13, 2017 ("June 13, 2017 Letter"), that medical records requested from the Buffalo VA Medical Center and Dr. David Conschafter, DC, had yet to be received, and submitting records to the ALJ on June 22, 2017, ALJ Jones failed to develop the record and issued the Third ALJ Decision ensuring the outstanding VA and chiropractic records had been received, and also improperly relied on the "five-day rule" in failing to consider the records submitted June 22, 2017. Plaintiff's Memorandum at 17-21 (citing AR at 741). In opposition, Defendant argues the ALJ neither misapplied the five-day rule nor failed to develop the record; rather, Plaintiff never attempted to submit the evidence described in the June 13, 2017 Letter, also described the records submitted on June 22, 2017 as "duplicative of prior material," and did not object to the ALJ's response that based on

---

[7] Plaintiff's further argument that the transcript of the June 27, 2017 administrative hearing was never made part of the administrative record, Plaintiff's Memorandum at 21-22, was later withdrawn when Plaintiff realized such transcript was included, but erroneously referenced as the transcript from the June 5, 2014 administrative hearing. Plaintiff's Reply at 1.

[8] Although argued by Plaintiff in the alternative, the court addresses whether the ALJ failed to properly develop the record by not considering records the ALJ considered filed after the relevant deadline to ensure all records timely submitted to the ALJ are considered.

Plaintiff's representation that such records were duplicative, they would not be accepted or reviewed. Defendant's Memorandum at 18-22. Plaintiff further argues the record establishes ALJ Jones relied on the five-day rule in refusing to consider records submitted on June 22, 2017. Plaintiff's Reply at 1-2. There is no merit to Plaintiff's argument.

The so-called "five-day rule" to which the parties refer is a recently enacted SSA regulation requiring, as of May 1, 2017, a disability benefits claimant submit or inform the ALJ of any evidence at least five business days prior to the scheduled administrative hearing. 20 C.F.R. § 416.1435(a). The ALJ may decline to consider or to obtain such evidence unless the claimant was misled by some agency action, a physical, mental, educational, or linguistic limitation, or "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control" prevented the claimant's compliance with the five-day rule. 20 C.F.R. § 416.1435(b). In the instant case, although the June 13, 2017 Letter was provided more than five business days prior to the third administrative hearing on June 27, 2017, Plaintiff never actually submitted the VA and chiropractic records referenced in the June 13, 2017 Letter. Accordingly, ALJ Jones' failure to consider such records cannot be attributed to improper reliance on the five-day rule. With regard to the records submitted on June 22, 2017 ("the June 22, 2017 records"),[9] only three business days prior to the third administrative hearing on June 27, 2017,[10] the relevant portion of the hearing's transcript establishes that ALJ

---

[9] A copy of the June 22, 2017 records is filed as Dkt. 12-2.
[10] The court takes judicial notice that June 22, 2017, a Thursday, was only three business days before the third administrative hearing held on June 27, 2017, a Tuesday. *See Ceglia v. Zuckerberg*, 2013 WL 1208558, at *22 n. 25 (W.D.N.Y. Mar. 26, 2013) (taking judicial notice of fact established by calendar), *report and recommendation adopted*, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 Fed.Appx. 34 (2d Cir. Apr. 20, 2015), *cert. denied*, __ U.S. __; 136 S.C.t. 823 (2016).

Jones advised that on June 22, 2017, "a single document of 20 pages from various providers was submitted into the electronic file," but the June 22, 2017 records were not added as an exhibit to the administrative record because the records were not from any of the providers listed in the "timely disclosure." AR at 500.[11] ALJ Jones then asked, "Was the claimant misled by the agency?" *Id*. Plaintiff's attorney responded the June 22, 2017 records "were just materially received from the claimant and just submitted. . . . I think they're duplicative of prior material." *Id*. The ALJ replied, "Then I will not accept them into evidence. I will not mark them, and they will not be reviewed based upon your representation." *Id*. at 500-01. Plaintiff did not object. The record thus establishes that the five-day rule did not factor in the ALJ's decision not to accept the June 22, 2017 records but, rather, the ALJ relied on Plaintiff's attorney's representation that the June 22, 2017 records were duplicative of exhibits already contained in the administrative record. Moreover, near the end of the third administrative hearing, ALJ Jones specifically recognized that

> *the record is not complete*. If upon receipt of the records – – I'm very familiar with VA records – – if I get hit with a volume of VA records that require additional questions be asked of a vocational expert this case will have to be rescheduled for a supplemental hearing at a time when [the VE] and I both are available. *So the case will remain in post for one week[ ] at which time I'll either have received the records from the VA and/or chiropractor, or a request for an extension of time with good cause shown. If I do not have either of those then the record will close and I will make a Determination based upon the contents of the file at that time*. Once I had an opportunity to review all the evidence, and as I say, that may not be at the end of one week's time. I have to wait and see what happens between now and then. *I would have to have an opportunity to review all of the evidence before a Decision can issue*. . . .

AR at 544 (italics added).

---

[11] It is undisputed that the June 22, 2017 records are not the VA and chiropractic records Plaintiff referenced in the timely disclosed June 13, 2017 Letter as requested but not yet received by Plaintiff's attorney and, thus, not submitted.

10

The record thus establishes ALJ Jones provided Plaintiff with more time following the third administrative hearing either to provide the VA and chiropractic records referenced in the June 13, 2017 Letter, or to request additional time to do so. Significantly, to date, no such additional records have been submitted, but such fact is unrelated to application of the five-day rule.

It is settled in the Second Circuit that "'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)-(f) (1995), and exists even when, as here, the claimant is represented by counsel." *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). Nevertheless, an ALJ's duty to affirmatively develop the record is discharged when the ALJ agrees to hold the record open to permit the claimant's counsel, who volunteers to do so, to obtain additional relevant records, with the caveat that if counsel fails to provide the records within a specified period of time, the ALJ's decision would be made based on the existing record. *See Jordan v. Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir. Sept. 8, 2005) (affirming district court's holding that no remand to the ALJ was required where, following administrative hearing, ALJ held record open for 30 days to permit Plaintiff's counsel to obtain and submit additional medical records with notice that if such evidence was not timely submitted, a decision would be made based on the record without the additional records). Significantly, in the instant case, the Third ALJ Decision was not issued until

11

September 22, 2017, well beyond the one-week period ALJ Jones advised the record would be held open to provide Plaintiff's counsel time to obtain and submit the records, yet the records were not submitted, nor was a request made by Plaintiff's counsel for additional time or for the ALJ's assistance in securing such records.

Insofar as ALJ Jones failed to consider the June 22, 2017 records, albeit only after Plaintiff's attorney advised the records were "duplicative of prior materials," AR at 500, "'[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation.'" *Gonzalez v. Colvin*, 2018 WL 1040250, at * 3 (W.D.N.Y. Feb. 24, 2018) (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)) (holding the ALJ did not abdicate his duty to develop the record when counsel affirmed at the administrative hearing that the record was complete and never made any request for the ALJ's assistance in securing additional medical records). Here, not only did Plaintiff's counsel state at the third administrative hearing that the June 22, 2017 records were "duplicative of prior material," AR at 500, but counsel also failed to object when ALJ Jones stated that, based on counsel's representation of the duplicative nature of the records, they would not be exhibited nor considered in determining Plaintiff's disability benefits application, AR at 500-01, nor did counsel make any attempt over the nearly three months between the third administrative hearing on June 27, 2017, and the ALJ's issuance of the Third ALJ Decision on September 22, 2017, to advise the ALJ not only that the June 22, 2017 records were not duplicative of evidence already in the record, but that such records were relevant and should be considered by ALJ Jones in

12

considering Plaintiff's disability benefits application. On this record, the ALJ's failure to consider the June 22, 2017 records is not attributable to any ALJ error.

## B. Capacity to Stand

Plaintiff argues remand is required because no medical evidence supports the ALJ's determination that Plaintiff retains the capacity for light work which requires the ability to stand for six hours in an 8-hour workday. Plaintiff's Memorandum at 15-17. Defendant maintains the administrative record contains substantial evidence supporting the ALJ's determination that Plaintiff can stand for six hours in an 8-hour workday, including the consultative opinion of neurologist John Schwab, D.O. ("Dr. Schwab"), that Plaintiff could stand for four hours and walk for four hours in an 8-hour workday. Defendant's Memorandum at 17-18. In reply, Plaintiff argues that equating standing and walking is erroneous. Plaintiff's Reply at 2-4.

Whether Plaintiff can walk for six hours in an 8-hour workday is significant because the ability to stand and walk for six hours is required for work of a "light" as compared to "sedentary" exertion.[12] In particular, although not defined under the

---

[12] Per the relevant regulations,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
> * * *
> Light work involves lifting no more than 20 points at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) and (b).

13

regulations, in Social Security Ruling ("SSR")[13] 83-10, the term "occasionally" is defined in the context of the walking and standing criteria for "sedentary work." Specifically,

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

SSR 83-10, 1983 WL 31251 at * 5.

In contrast, the walking and standing capability required for "light work" is "frequent" which is defined as

> off and on, for a total of approximately 6 hours of an 8-hour workday. . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

*Id.* at * 6.

Accordingly, a plain reading of the relevant regulation describing work of a light exertion, *i.e.*, 20 C.F.R. § 416.1567(b), and the pertinent portion of SSR 83-10, establishes light work requires the ability to sit and stand for a combined six hours in an 8-hour workday and not, as Plaintiff argues, to only stand for six hours. Further, substantial evidence in the record supports that Plaintiff can sit and stand for six hours in an 8-hour workday.

In particular, on October 18, 2014, Plaintiff underwent a consultative physical examination by neurologist Dr. Schwab, AR at 816-24, who assessed Plaintiff with the ability to stand for 30 minutes at one time, and to walk for 30 minutes at one time, as well as with the ability to stand for four hours in an 8-hour workday, and also to walk for four hours in an 8-hour workday. AR at 820. Because a plain reading of SSR 83-10

---

[13] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security. They are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

establishes the exertional requirement for light work includes standing and walking for a combined six hours in an 8-hour workday, Dr. Schwab's opinion that Plaintiff can stand and walk for a total of eight hours in an 8-hour workday is consistent with the ALJ's determination that Plaintiff is capable of the exertional requirements for light work. Significantly, the opinion of a consultative examiner assessed after physically examining a claimant can be considered substantial evidence on which the ALJ may rely in assessing a claimant's RFC. *See Sloan v. Colvin*, 244 F.Supp.3d 315, 324-26 (W.D.N.Y. 2014) (noting "consultative physician's opinion may serve as substantial evidence" and finding no error in ALJ's reliance on consultative examining physician's opinion in assessing the claimant's RFC). As such, substantial evidence in the record supports the ALJ's assessment that Plaintiff retained the ability to stand and walk as required for work at the light exertion level.

### C.     Treating Physician Rule

Plaintiff maintains ALJ Jones violated the treating physician's rule in determining Plaintiff's RFC by accepting the consultative opinion of Dr. Schwab over the opinions rendered by Plaintiff's treating primary care physician, David Holmes, M.D. ("Dr. Holmes"), and Pretei Lemo, MBBS[14] ("Dr. Lemo"), Plaintiff's treating physician with regard to Plaintiff's hip pain. Plaintiff's Memorandum at 10-15. Defendant responds that ALJ Jones provided sufficient reasons for discounting the equivocal and self-contradictory opinions of Drs. Holmes and Lemo. Defendant's Memorandum at 13-17.

---

[14] "MBBS" refers to Bachelor of Medicine, Bachelor of Surgery, and is a medical degree awarded by medical schools that follow the tradition of the United Kingdom, and is equivalent to a Doctor of Medicine or Doctor of Osteopathic Medicine awarded by medical schools following the system in the United States. See Educational Commission for Foreign Medical Graduates 2017 Guide: Reference Guide for Medical Education Credentials, available at www.ecfmg.org, *last visited* May 30, 2019.

Plaintiff further maintains Defendant, in arguing ALJ Jones did not violate the treating physician rule, "supplements the ALJ's boilerplate statement" by discussing evidence on which ALJ Jones did not rely. Plaintiff's Reply at 5.

Under the so-called "treating physician rule," the opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). In the instant case, substantial evidence in the record establishes the ALJ's failure to accord controlling weight to the opinions of Drs. Holmes and Lemo did not violate the treating physician rule.

Specifically, on October 5, 2009, Dr. Lemo completed a disability form on which he circled answers indicating Plaintiff's chronic and moderate right hip pain and back pain limited Plaintiff to standing for 30 minutes at one time, sitting for two hours at one time, could frequently climb stairs, that Plaintiff should never lift any weight, bend, stoop, balance, or climb ladders, but failed to circle the answer corresponding to how many hours Plaintiff could work in one day, and the form did not include any question regarding Dr. Lemo's opinion as to how long Plaintiff could walk. AR at 353-54. The ALJ found Dr. Lemo's opinion was not supported by the medical evidence of record and was inconsistent with treatment notes as well as objective evidence in the record

showing Plaintiff with only mild symptoms in his hip, and that Plaintiff ambulated with a normal gait and did not use any assistive devices. AR at 482. This finding is supported by treatment notes in the record indicating Dr. Lemo treated Plaintiff from July 10 through September 3, 2009, at Erie County Medical Center ("ECMC"), in Buffalo, New York. AR at 255-91. In particular, Dr. Lemo's treatment of Plaintiff during this period of time is very limited and largely related to following up with Plaintiff after a brief hospitalization at ECMC from July 10 to 12, 2009 for a back injury, chest pain and and hypertension complications. AR at 239-54. X-rays of Plaintiff's lumbar spine taken July 23, 2009 showed no evidence of fracture or significant degenerative changes. AR at 291. From August 1 to 4, 2009, Plaintiff was again admitted to ECMC, this time complaining about left upper quadrant pain, although "[p]hysical examination was largely within normal limits," and Plaintiff's discharge diagnosis included peptic ulcer disease, acute renal failure, resolved, hypertension, hyperlipidemia, and gout, and Plaintiff was prescribed a home blood pressure cuff, advised to check his blood pressure daily, follow a low-salt and low-fat diet, and to resume activity as tolerated. AR at 256-58. At follow-up with Dr. Lemo on August 6, 2009, Plaintiff reported he felt well and was without any complaints, AR at 275, and Plaintiff's back pain was reported as "stable on Tramadol." AR at 278. On September 3, 2009, Plaintiff had some right heel pain attributed to "gouty arthritis." AR at 273. On both August 6 and September 3, 2009, Dr. Lemo found Plaintiff with normal gait and station, range of motion, stability, muscle strength and tone. AR 273, 278. Accordingly, the ALJ's determination that Dr. Lemo's assessment of Plaintiff as limited to standing for 30 minutes, sitting for two

hours, and avoiding all lifting, bending, stooping, balancing, or climbing of ladders, AR at 353-54, is not supported by the scant treatment notes in the record from Dr. Lemo.

Similarly, on May 6, 2014, Dr. Holmes assessed that Plaintiff could stand and walk for ½ hour at a time, and for a total of two hours in an 8-hour workday, frequently lift and carry up to 5 lbs., occasionally lift and carry up to 10 lbs., occasionally lift up to 20 lbs., but never carry more than 10 lbs. nor lift more than 20 lbs., was unable to bend, squat, crawl, or climb, occasionally could reach, and was moderately restricted as to activities involving unprotected heights, being around moving machinery, and driving automotive equipment. AR at 804-05. Dr. Holmes further opined Plaintiff "most likely" unable to engage in "full-time competitive employment five days per week, eight hours per day on a sustained basis," adding "it's unclear what 'competitive' means exactly," but also indicated Plaintiff could work seven hours a day before pain prevented the performance of even simple work tasks. AR at 805. Dr. Holmes further found Plaintiff's pain medications did not affect Plaintiff's concentration, that Plaintiff did not need to lie down during an 8-hour workday, that Plaintiff possibly could experience pain symptoms making it impossible to function in a work setting, although this was "unlikely," and that Plaintiff's pain symptoms would be expected to cause Plaintiff to miss work only "0-1 day per month." AR at 805. ALJ Jones correctly found these assessments to be internally inconsistent with the rest of Dr. Holmes's opinion.

Furthermore, the medical record is consistent with Dr. Schwab's assessment of the impact of Plaintiff's impairments on Plaintiff's ability to do work-related activities. *See* AR at 818-24. Specifically, treatment notes show Dr. Holmes largely followed Plaintiff through the urology clinic at Cleve-Hill Family Health Center ("Cleve-Hill") for

treatment of hypertension, hypercholesterolemia, and Type 2 diabetes mellitus, with only occasional mentions of low back and right hip pain.  *See*, *e.g.*, AR at 836-40 (October 11, 2012), 841-44 (November 15, 2012), 774-78 (April 9, 2013), 778-80 (August 19, 2013), 781-84 (September 6, 2013), 785-87 (October 17, 2013), 788-90 (Nov. 16, 2013), 800-02 (February 11, 2014), 869-74 (May 6, 2014), and 883-88 (April 10, 2015).  Further, most of the treatment notes for Plaintiff consist of Primary Care Progress Notes ("Progress Notes") from Cleve-Hill where Plaintiff was seen by several health care providers, including Drs. Holmes and Lemo, yet the records largely pertain to Plaintiff's efforts to control his blood pressure, diabetes, ulcers, and gout, with only occasional references to Plaintiff's complaints of hip and low back pain.  *See*, *e.g.*, AR at 330 (July 15, 2009 Progress Note indicating Plaintiff's reason for visit was follow-up from previous hospitalization, hip and low back pain, and possible allergic reaction to medication).  Similarly, diagnostic testing, consisting largely of blood tests and radioactive imaging of Plaintiff performed at ECMC show essentially minimal changes.  *See*, *e.g.*, AR at 254 (lumbar spine X-ray taken July 25, 2009 should "no evidence of fracture or significant degenerative changes").  Moreover, the Progress Notes are largely consistent with Dr. Schwab's assessment on October 18, 2016, finding Plaintiff in no acute distress, with normal gait and station, able to walk on heels and toes without difficulty, used no assistive device, tandem walk heel-to-toe was normal, strength in lower extremities was normal, no dysmetria (lack of coordination), reflexes and muscle tone were normal, and no tremors or muscle atrophy was found.  AR at 816-17.  Dr. Schwab diagnosed Plaintiff with back ache, hypertension, and diabetes mellitus type 2,

for which his prognosis was stable, and statement Plaintiff had "no restrictions based on the findings of today's examination."  AR at 817.

Accordingly, the ALJ's decision to give the opinion of Dr. Schwab greater weight than those of Drs. Holmes and Lemo did not violate the treating physician rule.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

>                    /s/ *Leslie G. Foschio*
>     _____
>                    LESLIE G. FOSCHIO
>          UNITED STATES MAGISTRATE JUDGE

DATED:  June 3rd, 2019
      Buffalo, New York